# EXHIBIT 2

provide for the national defense. 50 U.S.C. 4558(c)(1)–(2). The DPA requires that each proposed voluntary agreement or proposed plan of action be reviewed by the Attorney General prior to becoming effective. If, after consulting with the Chairman of the Federal Trade Commission, the Attorney General finds that the purposes of 50 U.S.C. 4558(c) ''may not reasonably be achieved through a voluntary agreement or plan of action having less anticompetitive effects or without any voluntary agreement or plan of action,'' the agreement or plan may become effective. 50 U.S.C. 4558(f)(1)(B).

The DPA therefore requires action from the Attorney General from the standpoint of the antitrust laws. As a result, the Assistant Attorney General in charge of the Antitrust Division is already assigned the preparation of the Attorney General's approval or disapproval whenever such action is required by the DPA from the standpoint of the antitrust laws. 28 CFR 0.40(e). Conditions that may pose a direct threat to the national defense or its preparedness programs are inherently dynamic, and it is of utmost importance to be able to respond rapidly to such conditions. Therefore, the Attorney General has made the determination to promulgate a regulation unambiguously delegating to the Assistant Attorney General in charge of the Antitrust Division his authority to perform all functions that the Attorney General is required or authorized to perform by section 708 of the DPA (50 U.S.C. 4558).

### Administrative Procedure Act—5 U.S.C. 553

This rule is a rule of agency organization and relates to a matter relating to agency management and is therefore exempt from the requirements of prior notice and comment and a 30-day delay in the effective date. *See* 5 U.S.C. 553(a)(2), 553(b)(A), 553(d).

### Regulatory Flexibility Act

The Attorney General, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this regulation and by approving it certifies that this regulation will not have a significant economic impact on a substantial number of small entities because it pertains to personnel and administrative matters affecting the Department. Further, a Regulatory Flexibility Analysis is not required to be prepared for this final rule because the Department was not required to publish a general notice of proposed rulemaking for this matter. 5 U.S.C. 604(a).

### Executive Orders 12866, 13563, and 13771—Regulatory Review

This action has been drafted and reviewed in accordance with section 1(b) of Executive Order 12866, ''Regulatory Planning and Review,'' and section 1(b) of Executive Order 13563, ''Improving Regulation and Regulatory Review.'' This rule is limited to agency organization, management, and personnel as described in section 3(d)(3) of Executive Order 12866 and, therefore, is not a ''regulation'' or ''rule'' as defined by the order. Accordingly, this action has not been reviewed by the Office of Management and Budget.

This rule is not subject to the requirements of Executive Order 13771, ''Reducing Regulation and Controlling Regulatory Costs,'' because it is not a significant regulatory action under Executive Order 12866, and because it is ''related to agency organization, management, or personnel'' and thus not a ''regulation'' or ''rule'' under section 4(b) of Executive Order 13771.

### Executive Order 13132—Federalism

This rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on distribution of power and responsibilities among the various levels of government. Therefore, in accordance with Executive Order 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

### Executive Order 12988—Civil Justice Reform

This rule was drafted in accordance with the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

### Unfunded Mandates Reform Act of 1995

This rule will not result in the expenditure by State, local, and Tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more in any one year (adjusted annually for inflation), and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

### Congressional Review Act

This action pertains to agency management, personnel, and organization and does not substantially affect the rights or obligations of non-agency parties and, accordingly, is not a ''rule'' as that term is used by the Congressional Review Act, 5 U.S.C. 804(3)(B), (C). Therefore, the reporting requirement of 5 U.S.C. 801 does not apply.

### List of Subjects in 28 CFR Part 0

Authority delegations (Government agencies), Government employees, National defense, Organization and functions (Government agencies), Privacy, Reporting and recordkeeping requirements, Whistleblowing.

Accordingly, by virtue of the authority vested in me as Attorney General, including 5 U.S.C. 301 and 28 U.S.C. 509 and 510, part 0 of title 28 of the Code of Federal Regulations is amended as follows:

### PART 0—ORGANIZATION OF THE DEPARTMENT OF JUSTICE

■ 1. The authority citation for part 0 continues to read as follows:

   **Authority:** 5 U.S.C. 301; 28 U.S.C. 509, 510, 515–519.

■ 2. Section 0.40(l) is added to read as follows:

### § 0.40   General functions.

\* \* \* \* \*

   (l) As the delegate of the Attorney General, performance of all functions that the Attorney General is required or authorized to perform by section 708 of the Defense Production Act (50 U.S.C. 4558).

   Dated: November 20, 2020.

**William P. Barr,**

*Attorney General.*

[FR Doc. 2020–26222 Filed 11–25–20; 8:45 am]

**BILLING CODE 4410–14–P**

---

### DEPARTMENT OF JUSTICE

### Office of the Attorney General

### 28 CFR Part 26

**[Docket Number OAG 171; AG Order No. 4911–2020]**

**RIN 1105–AB63**

### Manner of Federal Executions

**AGENCY:** Office of the Attorney General, Department of Justice.

**ACTION:** Final rule.

---

**SUMMARY:** The Department of Justice (''Department'' or ''DOJ'') is finalizing amendments to regulations to authorize implementation of a sentence in a Federal capital case in any manner consistent with Federal law and to make other amendments.

**DATES:** This final rule becomes effective December 24, 2020.

**FOR FURTHER INFORMATION CONTACT:**
Laurence E. Rothenberg, Deputy Assistant Attorney General, Office of Legal Policy, U.S. Department of Justice, (202) 514–3116.

**SUPPLEMENTARY INFORMATION:**

### I. Background and Purpose

The Federal Death Penalty Act provides that a capital sentence in a Federal case is to be implemented ''in the manner prescribed by the law of the State in which the sentence is imposed.'' 18 U.S.C. 3596(a). However, if the ''law of the State in which the sentence is imposed'' ''does not provide for implementation of a sentence of death,'' then the statute directs the court to designate another State whose law does ''provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.'' *Id.*

The current execution regulations, promulgated in a final rule published on January 19, 1993, Implementation of Death Sentences in Federal Cases, 58 FR 4898 (Jan. 19, 1993), and codified at 28 CFR part 26, authorize execution only through lethal injection, except to the extent a court orders otherwise. Specifically, they direct the attorney for the government to ''file with the sentencing court a proposed Judgment and Order'' stating that ''[t]he sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death.'' 28 CFR 26.2(a). The regulations further state that, except to the extent a court orders otherwise, a sentence of death shall be executed on a date and at a time and at a ''federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons . . . [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death.'' *Id.* § 26.3(a).

Execution by lethal injection is authorized in all States that have capital punishment. *See In re Fed. Bureau of Prisons' Execution Protocol Cases,* 955 F.3d 106, 114 (D.C. Cir. 2020) (Katsas, J., concurring) (''Every state that authorizes capital punishment uses lethal injection 'as the exclusive or primary means of implementing the death penalty.' '' (quoting *Baze* v. *Rees,* 553 U.S. 35, 42 (2008) (plurality opinion))). However, some States also authorize execution by other means in certain circumstances. *See, e.g.,* Ala. Code 15–18–82.1(a) (by lethal injection but electrocution or nitrogen hypoxia may be elected); Miss. Code Ann. 99–19–51(1)–(4) (by lethal injection but by nitrogen hypoxia, electrocution, or firing squad if other methods are held unconstitutional or otherwise unavailable); Okla. Stat. tit. 22, sec. 1014 (same); Ark. Code Ann. 5–4–617(*l*) (by electrocution if execution by lethal injection is invalidated); Fla. Stat. 922.105 (by lethal injection but electrocution may be elected); *see also Bucklew* v. *Precythe,* 139 S. Ct. 1112, 1142 (2019) (Breyer, J., dissenting) (noting States permitting use of nitrogen hypoxia); *Glossip* v. *Gross,* 135 S. Ct. 2726, 2796 (2015) (Sotomayor, J., dissenting) (noting State using firing squad). One State has recently used electrocution. *See Media Advisory,* Tenn. Dep't of Corr. (Dec. 5, 2019, 7:27 p.m.), *https://www.tn.gov/correction/news/2019/12/5/media-advisory.html.* Some States also provide by law that a prisoner may choose the manner of execution from among several options, in at least some circumstances. *See* Ala. Code 15–18–82.1(b); Ariz. Rev. Stat. Ann. 13–757(B); Cal. Penal Code 3604; Fla. Stat. 922.105; Ky. Rev. Stat. Ann. 431.220(1)(b); S.C. Code Ann. 24–3–530(A); Tenn. Code Ann. 40–23–114(b); Va. Code Ann. 53.1–234. States may authorize execution by other means in the future, and it is possible that a State in the future will provide that a manner other than lethal injection is the *only* authorized means of execution. Section 3596(a) would then require execution in that manner for a Federal offender sentenced in the State.

The current regulations also provide that a Federal execution shall occur ''[a]t a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons.'' 28 CFR 26.3(a)(2). Section 3597(a), however, provides that State and local facilities and personnel may be used in carrying out Federal executions. As discussed above, future situations may arise in which it is necessary to carry out an execution by some means other than lethal injection. However, the Federal Bureau of Prisons (''BOP'') facility for carrying out executions, located at the Terre Haute correctional complex in Indiana, is equipped for carrying out executions only by lethal injection. If cases arise in which the Department is required to execute a Federal inmate according to the law of a State that uses a method other than lethal injection, the most expedient means of carrying out the execution may be to arrange for State assistance.

### II. Proposed Rule

The Department published a notice of proposed rulemaking (''NPRM'') on August 5, 2020, Manner of Federal Executions, 86 FR 47324 (Aug. 5, 2020), proposing amendments to 28 CFR part 26 intended to provide the Federal Government with greater flexibility to conduct executions in any manner authorized by section 3596(a) and to implement the statutory authorization in section 3597(a) that provides that State and local facilities and personnel may be used in carrying out Federal executions. The proposed rule also proposed various amendments to other provisions of the regulations, as described in detail below, that would eliminate redundancies, such as eliminating § 26.2 regarding filing of a judgment and order with the sentencing court, and that would update the regulations for current practice by the Department and its components, such as granting authority for decision-making about certain matters to the Director of BOP or his designee, rather than to the Warden of the institution where the execution is to be conducted.

By the end of the 30-day comment period on September 4, 2020, the Department received 23 comments that were responsive to the proposed rule. Following are the Department's responses to those comments.

### III. Summary of Changes in the Final Rule

After evaluating the 23 public comments, the Department has determined that no major changes to the proposed rule are necessary. As described in the next section, the majority of public comments reflected general opposition to the death penalty. Although the Department is mindful of those views, no changes are necessary in response to those comments, as the death penalty is expressly authorized by Federal statute and has been repeatedly upheld by the Supreme Court as constitutional. *See Bucklew* v. *Precythe,* 139 S. Ct. 1112, 1122 (2019) (''The Constitution allows capital punishment.''). Other comments opposed various provisions in the rule as unnecessary, unauthorized by the statute, or contrary to the statute. The Department disagrees with those assertions for the reasons stated below and declines to change the proposed rule in response to them. Other comments suggested amendments to the existing regulations that were not proposed by the Department and that the Department has declined to adopt. Other comments raised issues that are more properly addressed in the BOP execution protocol (including its manual and addendum).

In response to three comments, Department has amended the proposed rule as follows: First, the final rule corrects a scrivener's error in the NPRM that deleted ''Except to the extent a

court orders otherwise,'' from the first line of § 26.4; second, it adds, in § 26.4(a), a notice to the prisoner of the method of execution to be employed or, where applicable, of the prisoner's option to choose from among multiple methods; and third, it clarifies in § 26.4(b) that the designee of the BOP Director can allow other persons to visit the inmate in the seven days prior to the date of execution.

Although no commenter objected to a proposed amendment in § 26.3(a)(3) changing the officials responsible for selection of personnel assisting the execution from the United States Marshal and the Warden of the institution to solely the Director of BOP or his designee, the Department has determined upon further reflection that that revision would not be efficient for administrative and management purposes. Instead, the final rule amends the provision to provide that personnel will be selected by the Director of the United States Marshals Service and the Director of BOP or their designees.

## IV. Responses to Public Comments on the Proposed Rule

As noted above, a large majority of comments did not address specific proposed changes to the regulations. Rather, they expressed opposition to the use of capital punishment in general. Furthermore, many of those comments misunderstood the nature of the proposed amendments as designed to expedite executions or expand the use of capital punishment. As described above, the proposed amendments are not designed to achieve those objectives.

One comment by counsel for Federal death row inmates, as well as several other comments, had specific comments on the edits proposed in the NPRM. Following are responses to those comments.

### A. Manner of Execution

The proposed rule proposed to amend part 26 to provide, in 28 CFR 26.3(a)(4), that Federal executions are to be carried out by lethal injection ''or by any other manner prescribed by the law of the State in which the sentence was imposed or which has been designated by a court in accordance with 18 U.S.C. 3596(a).'' The amendment would ensure that the Department would be authorized to use the widest range of manners of execution permitted by law. Two commenters opposed this amendment.

One commenter argued that the rule should specify the guidelines that the Department would follow to ensure the humane implementation of a sentence and gave several examples of procedures for lethal injection that the commenter argued should be delineated in the regulations, as well as how a prisoner's medical conditions would be accommodated. A second commenter argued that the language of the preamble of the proposed rule inappropriately referred to authorizing any method under Federal law while the statute refers to requiring use of any method authorized by State law.

The Department declines to make changes to the proposed rule in response to these comments.

The issues raised by the first commenter included detailed matters about lethal injection, such as the nature of drugs used, placement and other procedures for use of the IV for provision of the drugs, and use of lethal injection in inmates with certain medical conditions. These are matters that the current regulations do not address and that the proposed rule did not propose to address. To the extent that the comment is arguing that issues it raises should nevertheless be addressed in the regulations, the Department considers these matters properly addressed in the BOP execution protocol, which includes more granular details regarding execution procedures.

The Department notes that this comment included a recommendation for consideration of alternative methods of execution, such as the firing squad, for prisoners with medical conditions for whom the commenter contended lethal injection would be inappropriate. The Department takes this comment as consistent with the overall purpose of the proposed rule to provide for methods of execution besides lethal injection, where they are prescribed by the relevant State law, although the specific application of any method to a particular prisoner is beyond the scope of this rulemaking.

This commenter also recommended that the notice of the date of execution provided to a prisoner also should state the method of execution to be used. The Department agrees with this recommendation. As the final rule provides for the possibility that methods other than lethal injection may be employed by the Department, it is reasonable that a prisoner be provided with notice of the method to implement that prisoner's sentence. In addition, as noted above, some State laws provide the prisoner the option to choose the method of execution.

For these reasons, in § 26.4(a), the final rule inserts ''the manner of execution and'' before ''date designated for execution,'' deletes ''date of'' after ''previously scheduled and noticed,'' and adds a new sentence at the end of the paragraph to read as follows: ''If applicable law provides that the prisoner may choose among multiple manners of execution, the Director or his designee shall notify the prisoner of that option.''

The second commenter misunderstands the proposed rule. The commenter is correct that the Federal Death Penalty Act refers to the use of the method of execution ''prescribed by the law of the State in which the sentence was imposed.'' However, the preamble of the proposed rule properly referred to ''federal'' law, because it is the Federal Death Penalty Act that provides the authority for the rule. In any event, the text of the proposed rule uses exactly the language of the statute, namely, ''by any other manner prescribed by the law of the State in which the sentence was imposed,'' as the commenter apparently was concerned that it should do.

### B. Use of State Facilities

The NPRM proposed to permit use of State facilities, in accordance with the authorization in section 3597(a), by striking ''federal'' before ''penal or correctional institution'' in § 26.3(a)(2), and replacing ''[b]y'' with ''[u]nder the supervision of'' a United States Marshal in § 26.3(a)(3). This change also is addressed in the regulatory certification with regard to Executive Order 13132 on federalism, which stated that there were no federalism implications under that order.

Several commenters objected to these changes. One commenter argued that it was ''implausible'' that the change would not have an impact on States and that the federalism implications were ''self-evident.'' In addition, this commenter alleged that the provision could violate the constitutional ''anti-commandeering'' principle. A second commenter opposed the provision on unclear grounds but possibly because the commenter believed that State officials would not be able to implement a Federal sentence without facing criminal liability for doing so. A third commenter stated that rather than using State facilities, the Department should expand the capabilities of the Terre Haute facility or other facilities to be able to implement executions through means other than lethal injection.

The Department declines to make changes to the proposed rule in response to the comments. Each of the commenters misunderstands the need for this change and the nature of the change. First, as noted, the change does nothing more than implement an existing statutory provision, which

expressly provides the Federal Government with the option to contract with willing States to use their facilities and personnel in Federal executions. The policy implications or trade-offs, such as whether to expand Federal capabilities or potential liability for State workers, are not at issue in this rulemaking, which simply ensures that the Department is able to use an option expressly provided by statute.

Second, as to the federalism implications, the Department reiterates that the rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government as laid out in Executive Order 13132. The commenter misunderstands the purpose of Executive Order 13132. It is intended to limit Federal power to make national standards in policy and legislation that would preempt States from developing their own, and to prevent imposition of "unfunded mandates" on States by the Federal Government. The amendments at issue here do not implicate these concerns, nor do they implicate the anti-commandeering principle. The Federal Government would be implementing its own policy by an agreement with a willing State government and would cover any costs to the State, as expressly provided by section 3597(a). It is notable that Federal executions routinely occurred in State facilities in the 20th century, and that practice does not appear to have raised any federalism concerns. *See Execution Protocol Cases,* 955 F.3d at 137 (Rao, J., concurring). It also is significant that no State government—that is, none of the affected entities—commented in opposition to the proposed regulation.

For these reasons, the final rule makes no changes to the proposed rule's amendments to implement the statutory authority to use and pay for State facilities.

*C. Other Amendments*

1. § 26.1

The NPRM proposed to add a new provision, § 26.1(b), that would authorize the Attorney General to vary from the regulation to the extent necessary to comply with applicable law. One commenter commented that the NPRM did not provide sufficient explanation of why the addition of this paragraph was necessary or identify the legal basis for that paragraph. In addition, the commenter claimed that the new paragraph would provide a catch-all provision allowing the Attorney General to ignore or change regulations at will with no further process, and ad hoc, even in specific cases for impermissible reasons, at the last moment, and without notice. The commenter claimed that this would be a conflict of interest as well, because the Attorney General could change the regulations that apply to the individual his agency is responsible for prosecuting and executing. The comment identified these alleged concerns but did not suggest specific changes to the proposed rule.

The Department declines to make changes to the proposed rule in response to the comment. This provision was added to account for the statutory requirement that the Attorney General implement an execution "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. 3596(a). The new paragraph is therefore intended only to ensure that the Attorney General can comply with State statutes that contradict the regulations. It is possible that at some point in the future a State statute that applies to the execution of a Federal inmate may differ, even in a minor respect, from the regulations. The specifics of such a difference are not currently foreseeable, however. Hence, in order to allow the execution to proceed without undue delay, this provision authorizes the Attorney General to account for that difference. The language of new § 26.1(b) itself clearly indicates that this is the intended purpose. It states, emphasis added, "*Where applicable law conflicts* with any provision of this part, the Attorney General may vary from that provision *to the extent necessary to comply with the applicable law.*" In fact, rather than providing the Attorney General with discretion to act arbitrarily or ad hoc, this provision limits the Attorney General's ability to vary from the regulation only in circumstances where controlling law requires him to do so and only to the extent necessary.

For these reasons, the final rule adopts new § 26.1(b) as proposed.

The NPRM also proposed to add a new provision, § 26.1(c), that would reiterate the Attorney General's authority to manage the Department's execution process, by stating that any task or duty assigned to any officer or employee of the Department of Justice under part 26 may be delegated by the Attorney General to any other officer or employee of the Department of Justice. Two commenters opposed this provision, stating that this change would allow the Attorney General to change regulations without notice to the public, rewrite the statute in violation of Congress's specific designation of certain officials—particularly a United States Marshal—to carry out certain duties, and violate the "statutory scheme" for executions in which the U.S. Marshals Service is given responsibility and accountability for implementation.

The Department declines to make changes to the proposed rule in response to the comments. As the NPRM explained, the proposed new paragraph is in line with the Attorney General's well-established authority to manage the Department. The commenters' arguments to the contrary are unavailing. First, one commenter's claim that the Attorney General could change regulations without notice is not relevant, as this provision itself is notice to the public that the Attorney General may re-designate responsibilities to other officials. Second, two commenters argued that the Attorney General lacks authority to reassign responsibilities that Congress has vested in other components by default. These comments ignore the plain language of the relevant sections of title 28 of the U.S. Code: "All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General," 28 U.S.C. 509; "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General," 28 U.S.C. 510. One commenter also argued that the provision would violate the "statutory scheme" for executions because the Director of the U.S. Marshals Service is accountable to Congress, as a Senate-confirmed officer. However, the U.S. Marshals Service is "a bureau within the Department of Justice under the authority and direction of the Attorney General," 28 U.S.C. 561(a), and, as the provisions of title 28 noted above establish, the ultimate accountability for all actions of the Department and its officials lies with the Attorney General, who is also a Senate-confirmed officer. Likewise, the same principle applies to the commenter's arguments that the U.S. Marshals Service is "uniquely suited" to carrying out the law in localities across the country. As a matter of law, the Attorney General, through all the components of the Department of Justice, enforces Federal law in all districts of the Nation. This is true notwithstanding the 26-year-old internal DOJ memo cited by the commenter, Memorandum to U.S. Marshals Service

Director Gonzalez et al. from Deborah Westbrook, General Counsel, The "Violent Crime Control and Law Enforcement Act of 1994" (House Report 103–771) (Sept. 9, 1994), which makes the factual determination that the U.S. Marshals Service would be responsible for implementation of death sentences. Finally, the commenter is incorrect that implementing executions "falls squarely within the 'primary role and mission'" of the U.S. Marshals Service of enforcing court orders—and no other component's role and mission. As explained in more detail later in this preamble, although all death sentences are embodied in court orders, the details of implementing a death sentence by the Department of Justice do not depend on a court order alone.

2. § 26.2

The NPRM proposed removing the content of § 26.2, concerning a proposed Judgment and Order, and reserving it for future use. One commenter commented that the NPRM did not provide sufficient explanation for why the deletion of this section was necessary. In addition, the commenter claimed that deleting this section—and in particular, the requirement that the court's Judgment and Order include a statement that the sentence be executed on a date and at a place designated by the Director of the BOP—runs afoul of a claimed legal principle that BOP's authority to set an execution date is derived solely from the authority of the courts. The commenter further asserted that vesting authority for setting an execution date in BOP would deprive courts of necessary oversight over when and whether death-sentenced inmates had exhausted their judicial remedies.

The Department declines to make changes to the proposed rule in response to the comment. Section 26.2 was promulgated in 1993, requiring prosecutors to submit a proposed Judgment and Order to the court in cases in which the defendant was sentenced to death. The content of the Judgment and Order would include four basic points: (1) The sentence was to be executed by a United States Marshal, (2) by injection of a lethal substance, (3) on a date and at a place designated by BOP, and (4) the prisoner under sentence of death was to be committed to the custody of the Attorney General or his designee for detention pending execution of the sentence. Subsequently, Congress enacted the Federal Death Penalty Act, 18 U.S.C. 3591 *et seq.* Within that Act, section 3596(a) essentially codified two of these points, leaving out that the execution occur by lethal injection and on a date and at a place designated by BOP. The rule's requirement that the Judgment and Order specify the manner of execution as lethal injection is inconsistent with section 3596(a), which authorizes executions "in the manner prescribed by the law of the State in which the sentence is imposed," which may not necessarily involve lethal injection. As to the requirement for the Judgment and Order to specify that executions occur on a date and at a place designated by BOP, that provision is also reflected in § 26.3(a)(1) and (2) ("Except to the extent a court orders otherwise, a sentence of death shall be executed: (1) On a date and at a time designated by the Director of the Federal Bureau of Prisons . . . ; (2) At a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons . . . ."). The provisions of 18 U.S.C. 3596 and 28 CFR 26.3 thus render § 26.2 unnecessary, meriting its removal.

In any event, the commenter's premise that BOP's authority to set an execution date derives solely from the courts is incorrect as a matter of law. *See, e.g., LeCroy* v. *United States,* 975 F.3d 1192, 1195–96 (11th Cir. 2020) (recognizing that, while the courts may historically have had some "concurrent" responsibility in setting execution dates, "[t]he Code of Federal Regulations vests the Bureau Director with broad authority and discretion to set execution dates as an initial matter"); *United States* v. *Lee,* No. 4:97–cr–00243–LPR–2, 2020 WL 3921174, at *3 (E.D. Ark. July 10, 2020) (expressing skepticism "that the founding generation . . . understood the *implementation* of a sentence to be of an entirely judicial nature" and noting that "until 1830 courts were all over the place as to whether they would set execution dates themselves or leave it to the Executive Branch"). The Executive Branch's authority to set an execution date, and the Attorney General's codification of that authority in the 1993 regulations, also are consistent with the Executive Branch's constitutional and statutory duties in general. *Cf. United States* v. *Tipton,* 90 F.3d 861, 902–03 (4th Cir. 1996) (concluding that "absent directly preempting congressional action, the Attorney General had constitutional and statutory authority to provide by regulation the means for executing death sentences imposed under [the Anti-Drug Abuse Act of 1988]," which preceded the Federal Death Penalty Act). Moreover, even if BOP's authority to set an execution date were derived from the authority of the courts, nothing would compel the court to use the precise "magic words" contained in § 26.2 to effectuate the delegation of its authority to BOP. *Lee,* 2020 WL 3921174, at *4 (rejecting claim that the only way a court may properly delegate its authority to implement a death sentence is by adopting the content of § 26.2 in an order).

The commenter's concern that removal of § 26.2 would deprive courts of oversight relating to execution dates also is misplaced. Section 26.3(a)'s prefatory language belies this concern, authorizing BOP's Director to set an execution date and time "[e]xcept to the extent a court orders otherwise." And nothing in the proposed amendment of the regulations, including the deletion of § 26.2, alters the courts' power to set aside or postpone execution dates pursuant to their authority to issue stays and injunctions. *See LeCroy,* 975 F.3d at 1196 ("the regulations . . . sensibly recognize—as they must—a court's authority to stay or enjoin a scheduled execution").

For these reasons, the final rule removes § 26.2 as proposed.

3. § 26.3

Section 26.3(a)(1) addresses the date and time of an execution and specifies that if the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted. The NPRM did not propose any changes to this paragraph. Nonetheless, several commenters *sua sponte* suggested alterations to this provision, contending that: The BOP Director lacks authority to designate the date and time of an execution; the Department should further define the phrase "when the stay is lifted" and the term "promptly"; and the regulations should set out procedures to follow in the event of a stay.

The Department declines to make changes to the proposed rule in response to the comments. First, the suggested changes are beyond the scope of the current rulemaking, in which the Department did not propose any changes to this portion of the regulations. In any event, as explained above in this preamble, the Attorney General may delegate authority in execution-related matters to the BOP Director. Moreover, as reflected in the current regulations, detailed procedures are better addressed in the Federal execution protocol. The Department also notes that the existing rule (along with § 26.4(a)) appropriately takes into account the possibility that an inmate's or court's last-minute actions may delay an execution past midnight, causing the

execution to be performed the day after it had been formally scheduled. The Department may consider the suggestions and proposals made in the comments if it undertakes further changes to the regulations or execution protocol.

For these reasons, the final rule makes no changes to § 26.3(a)(1).

In § 26.3(a)(3), the NPRM proposed clarifying that ''qualified'' personnel must carry out an execution, regardless of manner. Commenters suggested that ''qualified'' must be defined with objective criteria.

The Department declines to make changes to the proposed rule in response to the comment. The regulatory requirement that the Department employ ''qualified personnel'' in an execution is not new; the current language of § 26.3(a)(4) requires that lethal injections ''be administered by qualified personnel.'' With the expansion of permissible Federal execution methods, moving this phrase from paragraph (a)(4) to paragraph (a)(3) merely ensures that whatever method of execution is employed in light of the relevant State's laws, the personnel implementing that method will be suitably qualified. To the extent that the Department considers it appropriate to set out further details regarding qualifications, it may do so in the Federal execution protocol, as it has done in the addendum to the protocol regarding lethal injection. The Department notes that the relevant qualifications may change depending on the execution method called for by State law, and that to the extent that States change their methods, *see supra* (discussing expansion of Federal execution methods), entrenching static qualification criteria in regulations would be antithetical to the rulemaking's goal of ensuring that Federal executions may be responsibly carried out in accordance with any State's prescribed method of execution.

The amendments to § 26.3(a)(3) in the NPRM also had the effect of revising the official responsible for selection of personnel assisting the execution from the Marshal and the Warden of the institution to solely the Director of BOP or his designee. No commenter commented on this provision. The Department has determined that that revision would not be efficient for administrative and management purposes, however. Instead, the final rule amends the provision to provide that personnel will be selected by the Director of the U.S. Marshals Service and the Director of BOP or their designees.

For these reasons, the final rule revises § 26.3(a)(3) to provide that the sentence of death be executed under the supervision of a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional qualified personnel who are selected by the Director of the United States Marshals Service and the Director of the Federal Bureau of Prisons, or their designees, and acting at the direction of the Marshal.

4. § 26.4

In the first line of § 26.4, the proposed rule eliminated the phrase ''Except to the extent a court orders otherwise''. One commenter claimed that this change was unexplained, contrary to the original justification for the existing regulation, and would ''eliminate judicial oversight over critical aspects of the execution process.''

The Department notes that this change was a scrivener's error that inadvertently appeared in the final text of the NPRM during the process of formatting the operative text of the proposed rule.

For this reason, the final rule reinserts the phrase ''Except to the extent a court orders otherwise,'' in the first line of § 26.4.

Section 26.4(a) provides that a prisoner will receive notice of the date designated for execution ''at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution, in which case'' the prisoner shall be notified ''as soon as possible.'' The only change proposed to this section in the NPRM was to place responsibility for such notification with the ''Director of the Federal Bureau of Prisons or his designee'' instead of with the ''Warden.''

Commenters provided a number of suggestions unrelated to the proposed change, including arguments that this regulation should: Require notice to counsel; define what constitutes sufficient notice; limit who can be a ''designee'' for purposes of notice; and limit the Government's ability to continue a noticed execution date. Commenters also criticized the existing regime as limiting prisoners' ability to apply for clemency.

The Department declines to make changes to the proposed rule in response to the comments. These suggestions are beyond the scope of the current rulemaking, which sought only to change the official charged with providing notice of an execution date, not to alter the contours of that notice. In all respects relevant to these comments, the proposed rule is the same as the existing rule. Moreover, as discussed in connection with § 26.3(a)(1), the prompt rescheduling of an execution date may be necessary and appropriate where last-minute litigation requires a delay of execution past midnight of an originally scheduled date. Further, the Department observes that prisoners are free to prepare clemency petitions at any time and, per 28 CFR 1.10(b), to file such petitions as soon as proceedings on their direct appeal and first petition under 28 U.S.C. 2255 have terminated.

Furthermore, commenters' suggestion that 28 CFR 1.10(b) provides prisoners with a right to 30 days to file a clemency petition is incorrect; that provision creates a limitation, not an entitlement, providing that such petitions should be filed ''*no later than* 30 days after the petitioner has received notification from the Bureau of Prisons of the scheduled date of execution.'' (Emphasis added.) Nor does the existing regulation conflict with 28 CFR 1.10(c), which permits prisoners' counsel to request to make an oral presentation to the Office of the Pardon Attorney within the Department. Clemency counsel may still request and make such presentations well before a scheduled execution, even if the prisoner receives the minimum 20-day notice. Indeed, a clemency proceeding may be conducted within 20 days where an impending execution date requires such dispatch.

For these reasons, the final rule adopts new § 26.4(a) as proposed. The Department may consider the suggestions and proposals made in the comments if it undertakes further changes to the regulations or to the execution protocol.

Section 26.4(b) governs prisoner access to other persons in the week before the designated execution date, limiting such access to spiritual advisers, defense attorneys, family members, institution officials, and— upon the approval of the BOP Director— ''such other proper persons as the prisoner may request.'' The NPRM proposed to clarify that the BOP Director may approve prisoner requests for types of visitors not listed in the regulation, eliminating a reference to the ''Warden.'' It did not propose any other changes to this provision. Commenters nevertheless suggested a wide range of changes nonresponsive to the proposal, suggesting that the language limiting prisoner visits should be deleted, and that the regulation should be revised to permit attendance by anyone the inmate wants, subject to disapproval by officials only for good cause. Commenters also suggested replacing

''defense attorneys'' with ''members of defense team,'' adding ''all'' before ''members of his family,'' and eliminating ''only'' before the list of permitted visitors in the week before the execution. Some commenters even suggested removing all ''restrict[ions on] the type of visitors'' other than that they ''pass the security clearances'' at the facility.

The Department declines to make changes to the proposed rule in response to the comments. The NPRM did not propose substantive changes to the categories of persons to whom a prisoner may have access in the week before his execution date, and the comments are thus beyond the scope of the present rulemaking. The Department may consider the suggestions and proposals made in the comments if it undertakes further changes to the regulations or to the execution protocol.

Even were these comments responsive to proposed changes to the rules, the Department notes that to the extent that commenters desire a regulation creating a prisoner entitlement to unlimited types or numbers of visitors, their proposals are inconsistent with the need to limit visiting when necessary to ensure the security and good order of the institution and consideration of institution resources. The existing rule strikes an appropriate balance between providing a prisoner with access to spiritual, legal, and familial support, while maintaining security and conserving resources. The existing rule also already provides a mechanism to permit additional visitors identified by commenters (such as friends or paralegals working with a legal defense team), where BOP agrees that a prisoner's particular circumstances so warrant and the additions can be made without disrupting that balance or disturbing prison officials' discretion to determine which visitors may enter these high-security facilities, as provided at 28 CFR part 540, subpart D. The Department further notes that additional details, such as those relating to the frequency or method of visitation, are better addressed in the more finely reticulated provisions of BOP policy.

Another comment noted that proposed § 26.4(b), by deleting ''Warden,'' would authorize only the BOP Director to allow other persons to visit the inmate, which may be impractical. The commenter's observation is correct as to the proposed paragraph and the practical impact of deleting ''Warden''; the Department did not add ''or his designee'' after the reference to the BOP Director in § 26.4(b), when it deleted ''Warden,'' whereas the reference to the ''Warden'' throughout the regulation was elsewhere replaced with the BOP Director ''or his designee.'' For the sake of consistency with the rest of the amendments in the proposed rule, the Department agrees with the commenter that § 26.4(b) should also refer to the Director's designee.

For these reasons, the final rule revises § 26.4(b) as proposed, but also adds ''or his designee'' after ''Director of the Federal Bureau of Prisons.''

Section 26.4(c) governs execution attendance, requiring certain official personnel to attend and imposing limits on the numbers and types of other persons whom the prisoner and officials may designate to attend. The NPRM proposed eliminating references to the ''Warden,'' thus eliminating the requirement that the Warden attend executions, while maintaining the requirement that the Marshal attend. The only other proposed change was to vest authority for selecting necessary personnel in the Marshal and the BOP Director or his designee, instead of in the Marshal and the Warden. With respect to § 26.4(c)(1), commenters expressed concern that such authority could not be vested in the BOP Director or his designee and sought clarification whether the regulation was intended to require the agreement of both the Marshal and the BOP Director or his designee regarding personnel attendance. With respect to § 26.4(c)(3), although the commenters recognized that its text in the proposed rule remained materially unchanged from the existing regulation, they nonetheless proposed changes to it. Specifically, commenters requested that the regulation be revised to provide prisoners with an entitlement to have persons they specify attend their executions, suggesting that the inability of a prisoner-designated witness to attend should halt or delay an execution, potentially through litigation.

The Department declines to make changes to the proposed rule in response to the comments.

With respect to § 26.4(c)(1), as explained above, the BOP Director, or his designee, may properly be vested with authority in execution-related matters. With respect to the commenter's concerns about potential disagreements between Department officials regarding the personnel necessary to attend the execution, those concerns are unfounded as a practical matter, as each official selects personnel from his own agency to attend and no disagreements about personnel have ever arisen between the Marshal and the Warden under the existing regulation. In any event, the Attorney General has ultimate authority over all relevant officials and functions of the Department.

With respect to § 26.4(c)(3), no changes were proposed to this provision, and the commenters' proposed alterations are outside the scope of this rulemaking. In any event, the commenters erroneously suggest that the existing rule can be read to provide certain potential witnesses an entitlement to attend an execution. The clear language of the regulation specifies that ''[n]ot more than the following numbers of'' certain persons designated by the prisoner ''shall be present'' at an execution. (Emphasis added.) As the Seventh Circuit concluded in interpreting analogous language in § 26.4(c)(4), these terms establish ''a limitation on, not an entitlement to, witness attendance.'' *Peterson* v. *Barr,* 965 F.3d 549, 553 (7th Cir. 2020) (also rejecting the argument that § 26.4(c)(4) required the attendance of witnesses designated by Department officials ''before the execution may proceed''). To the extent commenters suggest that the regulation should instead provide an entitlement for specific persons to attend an execution, or even to permit potential witnesses to delay or halt an execution if unable or unwilling to attend, the Department disagrees. Such a regime could permit a prisoner's lawyers or family members to unilaterally halt an execution they oppose by the simple expedient of refusing to attend. The existing rule provides a reasonable avenue for Department officials to permit a prisoner's spiritual advisor, defense attorneys, and friends or relatives to attend without effecting this unprecedented and potentially disruptive change in execution procedures.

For these reasons, the final rule adopts the amendments to § 26.4(c) as proposed, and declines to make any changes to § 26.4(c)(3) as suggested by the commenters.

Current § 26.4(f) provides that ''[n]o photographic or other visual or audio recording of the execution shall be permitted.'' One commenter objected to this paragraph, stating that defense counsel should be permitted to video- and audio-record executions, and alternatively recommends that the Department also record executions. The commenter states that a recording is necessary to ensure a record for review by courts and by the legislature to adjudge whether the execution method is humane. The commenter states that witness observation through the window of rooms adjacent to the execution room is insufficient.

The Department declines to make changes to the proposed rule in response to the comment. The NPRM did not propose changes to § 26.4(f) and the Department will not change this provision in response to the comment. The Department values preserving the order, privacy, and solemnity of the proceeding more than the speculative value of audio or video recording of the execution. Recording also risks revealing the identities of personnel performing tasks implementing an execution; these persons' identities are not publicly available in order to protect them from harassment and threats. Further, multiple witnesses as identified in § 26.4(c) may attend the execution to observe. The presence of these witnesses accommodates the public interest in reports and eyewitness accounts of the execution.

Accordingly, the Department adopts the rule as proposed without revising § 26.4(f).

5. § 26.5

The proposed rule proposed to extend to non-DOJ employees (including contractors) existing protections that currently apply to DOJ employees, allowing them not to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the DOJ employee. The new language was almost the exact language on this matter used in 18 U.S.C. 3597(b).

No comments were received on this proposed amendment. Therefore, the final rule adopts the amendments to § 26.5 as proposed.

6. Access to Mobile Phones

One commenter commented that attorneys for the prisoner present at the execution should be allowed to have mobile phones or immediate access to a dedicated phone line to communicate outside the facility. The commenter further stated that prisoners should be able to communicate with counsel by phone when in the execution facility.

The Department declines to make changes to the proposed rule in response to the comment. Modifying the rule to detail the manner and means of accommodating phone communication between the prisoner and his attorney, and attorney access to phone communications when inside the execution facility, is unnecessary. The current rule and the NPRM do not address phone calls and visits with attorneys. The BOP execution protocol addresses this subject and permits calls and visits between the prisoner and his attorney including during the final 24 hours leading to the execution. The Department declines to incorporate the details of the manner and means of those communications into the text of the rule.

7. References to the Director of BOP or His Designee

One commenter objected to all those provisions (§§ 26.3(a)(3), 26.4(a), 26.4(c)(1), 26.4(c)(4), 26.4(e), and 26.4(g)) in which the proposed rule proposed to add ''or his designee'' after ''Director of the Federal Bureau of Prisons'' or replace ''Warden'' with ''Director of the Federal Bureau of Prisons or his designee.'' The commenter stated that the rule fails to define who can be a designee and fails to set any limits on which designees may make the decision or take the action described in the rule. Thus, the comment recommended that the rule include a definition of ''designee'' to ensure the person entrusted with the task is competent to do so and is specifically authorized.

The Director of the Federal Bureau of Prisons is authorized to redelegate duties vested in him. *See* 28 CFR 0.97. The authority to redelegate responsibilities regarding management of Federal correctional institutions and the custody and care of persons held therein allows appropriate flexibility in managing correctional institutions, including activities related to executions. Adopting the recommendation would unnecessarily curtail flexibility. Further, to the extent the Director redelegates the duties vested in him by this rule, such delegations would be better placed in the BOP execution protocol, which sets forth internal policy and procedures for carrying out the execution of a person convicted of a capital offense. Therefore, this subject is not suited to further elaboration in the rule and there is no need to modify the rule as the commenter recommends.

**V. Regulatory Review**

*A. Regulatory Flexibility Act*

The Attorney General, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this final rule and by approving it certifies that this regulation will not have a significant economic impact on a substantial number of small entities because it concerns the manner of implementing Federal death sentences on individuals convicted of capital offenses.

*B. Executive Orders 12866, 13563, and 13771—Regulatory Planning and Review*

This final rule has been drafted and reviewed in accordance with Executive Order 12866, ''Regulatory Planning and Review,'' section 1(b), ''The Principles of Regulation,'' and Executive Order 13563, ''Improving Regulation and Regulatory Review.'' The Office of Information and Regulatory Affairs has determined that the rule is a ''significant regulatory action'' under Executive Order 12866, section 3(f).

In the proposed rule, the Department stated that if finalized, the rule could entail financial costs if, at some point in the future, a prisoner is to be executed by a manner other than lethal injection. The Department would then either have to provide its own system for an execution by a manner other than lethal injection or pay for the use of State or local facilities and personnel to perform the execution. In such a circumstance, the cost would likely be the development of Federal capabilities to implement such a sentence or payment for the use of State or local facilities and personnel. No further information either in support of this analysis or in contradiction of it was received during the public comment period. The Department has therefore not changed its analysis of the impact of the rule.

This final rule is not a regulatory action for purposes of Executive Order 13771.

*C. Executive Order 13132—Federalism*

This final rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Section 3597 of title 18 provides that the Federal Government ''may use appropriate State or local facilities for the purpose [of implementing a sentence of death], may use the services of an appropriate State or local official or of a person such an official employs for the purpose, and shall pay the costs thereof.'' The statutory authorization and the rule to implement it are directed at the Federal Government. Neither the statute nor the final rule imposes any requirements for action or costs on States. Any actions using the services of State or local governments would be done by agreement, and with the Federal Government paying the costs thereof. As noted above, some commenters opposed the rule on federalism grounds, but those commenters misunderstood the requirements of Executive Order 13132

and the impact of the rule. Therefore, in accordance with Executive Order 13132, it is determined that this final rule does not have sufficient federalism implications to warrant the preparation of a federalism assessment.

*E. Executive Order 12988—Civil Justice Reform*

This final rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

*F. Unfunded Mandates Reform Act of 1995*

This final rule will not result in the expenditure by State, local, and Tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year (adjusted for inflation), and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

*G. Congressional Review Act*

This final rule is not a major rule as defined by the Congressional Review Act, 5 U.S.C. 804. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, or innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets.

**List of Subjects in 28 CFR Part 26**

Law enforcement officers, Prisoners.

Accordingly, for the reasons stated in the preamble, part 26 of chapter I of title 28 of the Code of Federal Regulations is amended as follows:

**PART 26—DEATH SENTENCES PROCEDURES**

■ 1. The authority citation for part 26 is revised to read as follows:

**Authority:** 5 U.S.C. 301; 18 U.S.C. 4001(b), 4002, 3596, 3597; 28 U.S.C. 509, 510, 2261, 2265.

■ 2. Amend § 26.1 by:
■ a. Designating the existing language as paragraph (a); and
■ b. Adding new paragraphs (b) and (c) to read as follows:

**§ 26.1   Applicability.**

\* \* \* \* \*

(b) Where applicable law conflicts with any provision of this part, the Attorney General may vary from that provision to the extent necessary to comply with the applicable law.

(c) Any task or duty assigned to any officer or employee of the Department of Justice by this part may be delegated by the Attorney General to any other officer or employee of the Department of Justice.

**§ 26.2   [Removed and Reserved]**

■ 3. Remove and reserve § 26.2.
■ 4. Amend § 26.3 by revising the section heading and paragraphs (a)(2), (3), and (4) to read as follows:

**§ 26.3   Date, time, place, and manner of execution.**

(a) \* \* \*

(2) At a penal or correctional institution designated by the Director of the Federal Bureau of Prisons;

(3) Under the supervision of a United States Marshal (Marshal) designated by the Director of the United States Marshals Service, assisted by additional qualified personnel selected by the Director of the United States Marshals Service and the Director of the Federal Bureau of Prisons, or their designees, and acting at the direction of the Marshal; and

(4) By intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons, or by any other manner prescribed by the law of the State in which the sentence was imposed or which has been designated by a court in accordance with 18 U.S.C. 3596(a).

\* \* \* \* \*

■ 5. Amend § 26.4 by revising the introductory text, paragraphs (a), (b), (c), (e), and (g) to read as follows:

**§ 26.4   Other execution procedures.**

Except to the extent a court orders otherwise:

(a) The Director of the Federal Bureau of Prisons or his designee shall notify the prisoner under sentence of death of the manner of execution and the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed execution, in which case the Director of the Federal Bureau of Prisons or his designee shall notify the prisoner as soon as possible. If applicable law provides that the prisoner may choose among multiple manners of execution, the Director or his designee shall notify the prisoner of that option.

(b) Beginning seven days before the designated date of execution, the prisoner shall have access only to his spiritual advisers (not to exceed two), his defense attorneys, members of his family, and the officers and employees of the institution designated in § 26.3(a)(2). Upon approval of the Director of the Federal Bureau of Prisons or his designee, the prisoner may be granted access to such other persons as the prisoner may request.

(c) In addition to the Marshal, the following persons shall be present at the execution:

(1) Necessary personnel selected by the Marshal and the Director of the Federal Bureau of Prisons or his designee;

(2) Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary;

(3) Not more than the following numbers of persons selected by the prisoner:

(i) One spiritual adviser;
(ii) Two defense attorneys; and
(iii) Three adult friends or relatives; and

(4) Not more than the following numbers of persons selected by the Director of the Federal Bureau of Prisons or his designee:

(i) Eight citizens; and
(ii) Ten representatives of the press.

\* \* \* \* \*

(e) The Director of the Federal Bureau of Prisons or his designee should notify those individuals described in paragraph (c) of this section as soon as practicable before the designated time of execution.

\* \* \* \* \*

(g) After the execution has been carried out, qualified personnel selected by the Director of the Federal Bureau of Prisons or his designee shall conduct an examination of the body of the prisoner to determine that death has occurred and shall inform the Marshal and the Director of the Federal Bureau of Prisons or his designee of his determination. Upon notification of the prisoner's death, the Marshal shall ensure that appropriate notice of the sentence's implementation is filed with the sentencing court.

\* \* \* \* \*

■ 6. Amend § 26.5 by revising the first sentence to read as follows:

**§ 26.5   Attendance at or participation in executions by Department of Justice personnel.**

No officer or employee of the Department of Justice or a State department of corrections, or any employee providing services to those departments under contract, shall be required, as a condition of that employment or contractual obligation, to be in attendance at or to participate in any execution if such attendance or

participation is contrary to the moral or religious convictions of the officer or employee, or, if the employee is a medical professional, if the employee considers such participation or attendance contrary to medical ethics.
* * *

Dated: November 18, 2020.

**William P. Barr,**
*Attorney General.*

[FR Doc. 2020–25867 Filed 11–25–20; 8:45 am]

**BILLING CODE 4410–19–P**

---

**NATIONAL LABOR RELATIONS BOARD**

**29 CFR Part 102**

**Rule Exempting an Amended System of Records From Certain Provisions of the Privacy Act**

**AGENCY:** National Labor Relations Board.

**ACTION:** Direct final rule.

**SUMMARY:** The National Labor Relations Board (NLRB) exempts a new system of records, NLRB iTrak and Banned Entry List, from certain provisions of the Privacy Act of 1974, pursuant to sections (k)(1), (2), and (5) of that Act.

**DATES:** This rule is effective January 26, 2021 without further action, unless adverse comment is received by December 28, 2020. If adverse comment is received, the NLRB will publish a timely withdrawal of the rule in the **Federal Register**.

**ADDRESSES:** All persons who desire to submit written comments for consideration by the Agency regarding the rule shall mail them to the Agency's Senior Agency Official for Privacy, National Labor Relations Board, 1015 Half Street SE, Third Floor, Washington, DC 20570–0001, or submit them electronically to *privacy@nlrb.gov.* Comments may also be submitted electronically through *http://www.regulations.gov,* which contains a copy of this rule and any submitted comments.

**FOR FURTHER INFORMATION CONTACT:** Prem Aburvasamy, Senior Agency Official for Privacy, National Labor Relations Board, 1015 Half Street SE, Third Floor, Washington, DC 20570–0001, (202) 273–3733, *privacy@nlrb.gov.*

**SUPPLEMENTARY INFORMATION:** Elsewhere in this issue of the **Federal Register**, the Agency has announced a new system of records, NLRB–34, NLRB iTrak and Banned Entry List, pursuant to the Privacy Act of 1974, 5 U.S.C. 552a.

Pursuant to subsections (k)(1), (2), and (5) of the Privacy Act, and for the reasons set forth below, the Board includes within 29 CFR 102.119 additional paragraphs (q) and (r), exempting portions of the amended system of records (NLRB–34) from subsections (c)(3), (d), (e)(1), (e)(4)(G), (e)(4)(H), (e)(4)(I), and (f) of the Privacy Act.

Subsection (k)(1) of the Privacy Act authorizes the head of an agency to exempt a system of records from subsections (c)(3), (d), (e)(1), (e)(4)(G), (e)(4)(H), (e)(4)(I), and (f) of the Privacy Act (5 U.S.C. 552a(c)(3), (d), (e)(1), (e)(4)(G), (e)(4)(H), (e)(4)(I), (f)) (hereinafter, "the applicable subsections") if records are properly classified pursuant to an Executive order, within the meaning of section 552(b)(1) of the Freedom of Information Act.

Subsections (k)(2) and (5) of the Privacy Act, in combination, authorize the head of an agency to exempt a system of records from the applicable subsections if records are created or maintained for the purpose of law enforcement (other than material within the scope of subsection (j)(2) of the Privacy Act), as well as determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to September 27, 1975, under an implied promise that the identity of the source would be held in confidence. As indicated in the Agency's accompanying Privacy Act system of records notice issuing NLRB–34, this system contains information compiled by the Agency in the course of carrying out its security responsibilities.

The requirements of the applicable subsections, if applied to the system of records NLRB–34, would substantially compromise the ability of the Agency's Security Branch staff to effectively conduct investigations concerning the suitability, eligibility, and fitness for service of applicants for Federal employment and contract positions at the Agency, in addition to determining the appropriate level of access to the Agency's facilities. For instance, the disclosure requirements as set forth in the provisions for notice, access, amendment, review, and accountings could enable subject individuals to take action to jeopardize the physical safety or anonymity of confidential sources used during investigatory proceedings. Additionally, the disclosure of information gathered during a security investigation may unreasonably weaken the interests of protecting properly classified information and the objectivity of certain examination materials.

This rule relates to individuals rather than small business entities. Accordingly, pursuant to the requirements of the Regulatory Flexibility Act, 5 U.S.C. 601–612, this rule will not have a significant impact on a substantial number of small business entities.

In accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*), the Agency has determined that this rule would not impose new recordkeeping, application, reporting, or other types of information collection requirements on the public.

The rule will not have a substantial direct effect on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among levels of government. Therefore, it is determined that this rule does not have federalism implications under Executive Order 13132.

In accordance with Executive Order 12866, it has been determined that this rule is not a "significant regulatory action," and therefore does not require a Regulatory Impact Analysis.

**List of Subjects in 29 CFR Part 102**

Privacy, Reporting and recordkeeping requirements.

For the reasons stated in the preamble, the NLRB amends 29 CFR part 102 as follows:

**PART 102—RULES AND REGULATIONS, SERIES 8**

■ 1. The authority citation for part 102 is revised to read as follows:

**Authority:** 29 U.S.C. 151, 156. Section 102.117 also issued under 5 U.S.C. 552(a)(4)(A), and § 102.119 also issued under 5 U.S.C. 552a(j) and (k). Sections 102.143 through 102.155 also issued under 5 U.S.C. 504(c)(1).

**Subpart K—Records and Information**

■ 2. Section 102.119 is amended by revising the section heading and adding paragraphs (q) and (r) to read as follows: