```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
FEDERAL CAPITAL HABEAS PROJECT, et al.    )  Civil Action
                                          )  No. 20-3742
                         Plaintiffs,      )
vs.                                       )
                                          )
JEFFREY A. ROSEN, et al.,                 )  January 11, 2021
                                          )  1:49 p.m.
                         Defendants.      )  Washington, D.C.
                                          )
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE RUDOLPH CONTRERAS,**
**UNITED STATES DISTRICT COURT JUDGE**

**_All Parties Appearing Telephonically_**

**APPEARANCES**:


```
FOR THE PLAINTIFFS: ELIZABETH B. PRELOGAR
                    ELIAS KIM
                    Cooley, LLP
                    1299 Pennsylvania Ave. NW, Suite 700
                    Washington, DC 20004-2400
                    (202) 776-2076
                    Email: eprelogar@cooley.com


FOR THE DEFENSE:    BRADLEY P. HUMPHREYS
                    U.S. Department of Justice
                    Civil Division, Federal Programs Branch
                    1100 L Street, NW
                    Washington, DC 20005
                    (202) 305-0878
                    Email: bradley.humphreys@usdoj.gov


Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter
                    Washington, D.C.  20001
```

Proceedings reported by machine shorthand,
transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1        THE DEPUTY:  This is Civil Action 20-3742, Federal

2    Capital Habeas Project, et al. versus Jeffrey Rosen, et al.

3        For the Federal Capital Habeas Project, et al., I

4    have Ms. Elizabeth Prelogar and Mr. Elias Kim.  For

5    defendant I have Mr. Bradley Humpfreys.  Our court reporter

6    again today is Ms. Elizabeth Saint-Loth.  All parties are

7    present.

8        THE COURT:  Good afternoon.

9        MR. HUMPFREYS:  Good afternoon, Your Honor.

10        MS. PRELOGAR:  Good afternoon, Your Honor.

11        MR. KIM:  Good afternoon, Judge.

12        THE COURT:  Let me hear first from Mr. Humpfreys

13    on what he sees the implications of the Fourth Circuit

14    scheduling the oral argument -- scheduling a date after

15    January 15th.

16        MR. HUMPFREYS:  Yes, Your Honor.

17        As the Court seems aware, the sentencing court

18    still has not designated a state other than Maryland under

19    the FDPA.  The Fourth Circuit denied the Government's

20    request for expedited consideration of its appeal and set

21    oral argument for January 27th.

22        At this time, the Government cannot proceed with

23    Mr. Higgs' execution; however, my understanding is that the

24    Solicitor General has authorized the Government to seek

1    expedited relief from the Supreme Court.

2            THE COURT:  Okay.  So, as things stand now, it's

3    the Government's position that the execution can't go

4    forward unless the Supreme Court takes action; is that

5    right?

6            MR. HUMPFREYS:  That's correct, Your Honor.  Yes.

7            THE COURT:  All right.  And then, in your recent

8    filing, you indicated that with respect to the three other

9    plaintiffs no dates have been set; and there's no intention

10   of setting dates before January 15th, is that correct?

11           MR. HUMPFREYS:  That's also correct, Your Honor.

12           THE COURT:  Okay.  All right.  Anything else you

13   need to update the Court about?

14           MR. HUMPFREYS:  No further updates, Your Honor.

15   Of course I have points on the All Writs Act, but --

16           THE COURT:  Sure.

17           MR. HUMPFREYS:  -- I can say that now, or wait for

18   Ms. Prelogar, whatever you prefer, Your Honor.

19           THE COURT:  Let me hear from Ms. Prelogar as far

20   as any factual updates she may have.

21           MS. PRELOGAR:  Thank you, Your Honor.

22           So I am, of course, also prepared to discuss the

23   All Writs Act.  We don't have further factual updates.  It's

24   news to us about the Solicitor General authorizing expedited

25   relief from the Supreme Court, so I'm just learning that

1    fact right now.  But, beyond that, I'd be happy to discuss

2    the All Writs Act issue, and have no further factual

3    updates.

4            THE COURT:  Okay.  I don't care who goes first on

5    the All Writs Act.  Why don't you go first, Ms. Prelogar,

6    since I have you now on the call.

7            MS. PRELOGAR:  Absolutely.

8            So I will just say, at the outset, that we do

9    appreciate the representations that the Government made in

10   its filing late last night.  We'd feel all the more

11   comfortable, though, if those restrictions that the

12   Government has suggested it will bind itself to were

13   included in an order from this Court.  We think that the All

14   Writs Act provides an appropriate mechanism for that, as the

15   Court has suggested.

16           To that end, we reviewed the authority; and I

17   think that it provides a good framework for defusing the

18   present emergency, particularly now that there will -- it

19   seems -- be, kind of, last-minute litigation concerning

20   what's going to happen with Mr. Higgs' execution, and this

21   would provide a basis to preserve the Court's authority to

22   consider these merits issues in the normal course.

23           There are definitely parallels between the cases

24   that were cited in the minute order; but there is also one

25   critical difference that I want to make sure to bring to the

1    Court's attention and that I'd encourage the Court to keep

2    in mind as it considers an appropriate ruling in this case.

3           So, again, our bottom line here -- we have no

4    objection to resolving the current emergency with an order

5    under the All Writs Act.  We think actually the subpoena

6    case involving President Trump's tax returns provides a good

7    framework and, particularly, with respect to the

8    14-day-notice period that was provided in that case we think

9    so too here an appropriate order can provide that the

10   federal government must give 14 days' notice before it

11   invokes the new authority in the final rule and that would

12   give them an appropriate window, essentially, to be able to

13   litigate those claims.

14          As we read the cases that were cited in the minute

15   order, in both cases, *AstraZeneca* and the subpoena case, the

16   courts determined that any challenge to the Government's

17   actions would be moot as soon as the Government took the

18   action.  So, of course, with *AstraZeneca* with respect to the

19   generic version of the drug, as soon as the approval was

20   obtained the generic companies were going to release the

21   product.  And in the subpoena case, if the tax returns were

22   requested under New York law, Congress would get them before

23   the subpoena could be challenged and, in fact, the president

24   wouldn't receive notice that the subpoena had issued.  So

25   the concern with mootness in those cases justified the All

1    Writs Act order, and there was the requirement then that the

2    Government provide notice to create this space for

3    meaningful review.  And we think that that same concern with

4    mootness would justify the Court in entering a similar order

5    here.

6            As we discussed last week at the preliminary

7    injunction hearing, when the Government invokes the new

8    authority in the final rule, the challenge is that the case

9    can become moot before legal claims are adjudicated with

10   respect to the final rule's validity.  And I just want to

11   make clear, we think that applies to all three of the claims

12   that we're pressing here.

13           So, of course, with respect to 2126(b) and (c) --

14   these were the provisions we discussed that give the

15   Attorney General authority to vary from the regulations and

16   also to potentially reassign the supervision of execution

17   away from the U.S. Marshal to the BOP.  Those provisions, as

18   we were discussing, could be invoked very close in time to

19   the execution itself, and then carrying out the execution

20   would moot the challenge and there is no notice provision in

21   the final rule.

22           But I also wanted to make sure to note that we

23   think that the same concern applies to the removal of 26.2,

24   that's the removal of the authority to go to court and get

25   the authority to set the execution date in the first

1   instance.  And the concern there is that once the federal

2   government sets an execution date courts have ruled, as we

3   were discussing, that the only way to stop the execution

4   from going forward is to get a stay.  But the whole point of

5   the separation of powers violation and concern is that the

6   individual shouldn't be in that framework in the first

7   place.  There should be, at the outset, court approval of

8   the execution date, and court involvement in authorizing

9   that to occur.

10      So our concern here is that that very harm with

11  having the date set could happen and box the individual into

12  the stay factors.  And, then, with respect to the notice

13  period, we think that 14 days is a reasonable notice period;

14  that, of course, was the amount that was selected in the

15  subpoena case.

16      I point the Court to the decision that we cited

17  involving the Alabama prisoner in the *Ray* case; that was the

18  denial of the admission of the spiritual visor.  There the

19  Supreme Court held that a challenge was too late when it was

20  filed ten days before the execution, so that prompts our

21  concern here with making sure that there is an appropriate

22  notice period so that all of the litigation can occur

23  without that same concern about the Supreme Court saying

24  that actually the suit is untimely.

25      So then -- I promised there was a difference that

1    I wanted to make sure to discuss, and the difference has to

2    do with ripeness rather than mootness.  Our case is ripe in

3    a way that those cases that were the subject of the minute

4    order were not.  The reason for that is here we have final

5    agency action; it's already occurred through publication of

6    the final rule.  And so our case doesn't depend on any

7    further factual development but, instead, it challenges the

8    final rule on its face.

9         And I will be completely candid with the Court,

10   the reason that we want to bring this to the Court's

11   attention and that we're worried about it is that if this

12   Court were to decide at this junction that the case is not

13   ripe or included language to that effect in an order, then

14   we worry that it would suggest that these claims could

15   effectively only ever be decided in an emergency posture

16   right before an execution.  So we think that the Government

17   would effectively try to latch on to any statement about

18   ripeness, and it would just go forward to summary judgment

19   and ask this Court to dismiss the case outright; that would

20   flout the ability of our plaintiffs to get a resolution of

21   the validity of the final rule without being in an emergency

22   posture.

23        In that sense, this is very different from the

24   cases in the minute order because there the ripeness issue

25   was, I think, a far easier one; those cases were not clearly

1    ripe and depended on further factual development.

2              In the subpoena case, actually President Trump

3    conceded the case wasn't ripe and it was clear that there

4    were relevant missing facts.  The challenge depended on

5    whether there was a legitimate legislative purpose for the

6    subpoena, and you couldn't adjudicate that until you knew

7    what Congress's purpose was in the first place -- until it

8    had effectively announced its purpose of seeking the

9    subpoena.

10             And then in *AstraZeneca* as well, the Government

11   hadn't yet decided whether to approve the new drug

12   application; that was ongoing.  The FDA said maybe it was

13   going to take into account *AstraZeneca*'s legal claims and

14   further said that there were factual issues related to the

15   safety of the label.  So there were, kind of, inherent

16   factual predicates that were missing that made it impossible

17   to fully be able to adjudicate those claims.

18             But I just want to make sure that the Court

19   understands that our case is different because we're raising

20   a preenforcement challenge but we're presenting wholly legal

21   issues, and it doesn't depend on any future facts.  We are

22   challenging the regulations as written.  And so our

23   challenge can be adjudicated without looking at any

24   justification the Government might have for when it invokes

25   the authority in the final rule, for example, with the vary

1    provision.

2              Our challenge doesn't depend on what provision the

3    Government is varying from or why it says it needs to vary.

4    We're saying that the process that is set out in Section

5    26.1(b) itself is unlawful on its face; it violates the APA.

6    And so, too, with 26.1(c) -- that's the reassigning duty --

7    we're saying there that provision violates the federal death

8    penalty act and the APA.  And also, of course, with the

9    removal of 26.2, that's a purely legal issue; it doesn't

10   require facts.  It turns on analyzing the balance of

11   Article III authority.

12             So, for all of these reasons, we think the Court

13   can conclude that our case is ripe and yet still grant

14   relief under the All Writs Act, defuse this present

15   emergency based on the mootness concern; that would provide

16   the pathway to consider this case a summary judgment.

17             And we did a little bit of research to make sure

18   we could say this, that the All Writs Act can be invoked

19   when there are concerns about mootness alone without kind of

20   that ripeness piece.  We did identify one case I can point

21   the Court to; it's called *Al Otro Lado versus Wolf*.  This is

22   a recent Ninth Circuit decision; the cite is 952 F.3d 999.

23   It was in a different procedural posture, so I wouldn't say

24   it's on all fours with this case, but -- and it raises a

25   different set of issues about asylum claims.  But there, as

1    we read the case, the Ninth Circuit was relying expressly on

2    these concerns about mootness to hold that the All Writs Act

3    justified the order in that case which granted a preliminary

4    injunction for fear that otherwise the plaintiffs' claims

5    would become moot.

6         Alternatively, of course, the Court could reserve

7    judgment on this issue and still go forward with the All

8    Writs Act order in this case.  But the one thing that we

9    would ask the Court not to do is say that our case is not

10   ripe because I think that would have unwarranted

11   consequences for the rest of this litigation and we think

12   it's inaccurate based on the particular procedural posture

13   of our case.

14        THE COURT:  Okay.  Thank you.

15        Mr. Humpfreys.

16        MR. HUMPFREYS:  I do want to make a few points,

17   Your Honor.  Thank you.

18        With the Court's permission, I would like to touch

19   briefly on the irreparable harm issue before turning to the

20   All Writs Act specifically because the two issues are very

21   interconnected.

22        As the Government represented at the last hearing,

23   it will not vary from the regulations in the upcoming

24   execution of Mr. Higgs if that execution does, in fact, go

25   forward as scheduled.

1          The Government also represented that it will not

2  delegate any authority under Section 26.1(c) from the U.S.

3  Marshal to any other official to supervise Mr. Higgs'

4  execution, again, if that execution goes forward at all.

5          Furthermore -- and confirmed a few minutes ago --

6  the Court asked at the previous hearing whether the

7  Government intended to schedule any further executions

8  before January 20th.  I have confirmed that the Government

9  does not.

10          As to the 26.2 issue -- as the Government pointed

11  out in a filing last night, Mr. Higgs was scheduled for

12  execution pursuant to the 1993 regulations before Section

13  26.2 was repealed; and the sentencing court there entered an

14  order that specifically recites the elements required by

15  26.2 in Mr. Higgs' case, meaning that the repeal of that

16  section has no possible effect whatsoever on Mr. Higgs.

17          Turning to the All Writs Act in light of those

18  things, there is no chance here that the disputes will

19  become ripe at all with respect to Mr. Higgs and, therefore,

20  there is no need for the Court to consider relief under the

21  All Writs Act.

22          Plaintiffs say the case is ripe now, but the

23  plaintiffs' injury depends on some -- or even its claim

24  depends on some future variation from the rule which hasn't

25  happened and as the Government has explained actually will

1    not happen imminently, certainly not with respect to

2    Mr. Higgs.  So the Government strongly disagrees that the

3    issues are ripe now.

4           As to preenforcement challenges, those apply

5    typically only when plaintiffs challenge agency actions that

6    regulate their own conduct, which is not the case here.  And

7    I believe plaintiffs are saying that they are bringing a

8    facial challenge.  The standard when reviewing a facial

9    challenge is whether -- without -- there are no

10   circumstances under which the agency action would be

11   unlawful or -- excuse me -- lawful.  That's clearly not the

12   case here because the department hasn't decided to

13   actually use its authority under 26.1(b) to vary from the

14   regulations.

15          I'd also note, Your Honor, that plaintiffs have

16   never moved for relief under the All Writs Act which further

17   weighs against entry of any relief against the Government.

18   And plaintiffs now ask for some sort of a 14-day delay, but

19   that would be an injunction.  And to the degree the Court is

20   contemplating relief under the All Writs Act that would

21   effectively stay or enjoin Mr. Higgs' execution, that would

22   not be appropriate unless the Court were to first determine

23   that plaintiffs have met the requirements for equitable

24   relief; and that's very clear from the Supreme Court's

25   decision in *Dunn v McNabb*, 138 S.Ct. 369, which addressed

1    that very issue in the context of capital punishment.

2            As to the two cases the Court pointed us to in the

3    minute order, *AstraZeneca* and *Ways and Means Committee*, we

4    don't think that they actually suggest relief would be

5    appropriate.  In *AstraZeneca*, the court, again, did not

6    enter an injunction preventing the approval of the generic

7    drug; it ordered only that the agency give the court notice

8    before approving that drug.

9            So to the degree the Court is considering an order

10   enjoining Higgs' execution for even a specified amount of

11   time, *AstraZeneca* would not provide any support for that

12   relief.  That case is also not relevant because -- unlike

13   the facts of this case, the issues presented here for the

14   reasons I discussed actually never will become ripe,

15   certainly not with respect to Mr. Higgs.  He was the only

16   inmate who has an execution scheduled.

17           In other words, because defendants will not take

18   any action under the challenge provisions of final rule with

19   respect to Higgs' execution if it goes forward at all, there

20   is no chance that the challenge regulations will become

21   simultaneously ripe and moot.

22           Regarding the *Ways and Means Committee* case also

23   easily distinguishable, although some of the defendants had

24   made a commitment in that case that they would provide the

25   court and the plaintiffs with notice with respect to any

1    requests made by the committee chairperson.  The defendants

2    did not say unequivocally, as we do here, that the committee

3    would not request the president's tax returns at all.

4         Here there is a significant contrast between the

5    *Ways and Means Committee* case because the Government has

6    represented it will not vary from the regulations or

7    delegate the responsibilities of the U.S. Marshal with

8    respect to Mr. Higgs' execution.  So we believe that relief

9    under the All Writs Act is unnecessary to preserve the

10   Court's jurisdiction status.

11        One more point.

12        THE COURT:  Go ahead.

13        MR. HUMPFREYS:  One more point.

14        Yes.  Thank you, Your Honor.

15        Again, I would just point out that even though in

16   the *Ways and Means Committee* case the court did enter an

17   injunction of sorts prohibiting the defendants from

18   receiving any of the requested records for a period of time.

19   Again, that would not be appropriate here under *Dunn v*

20   *McNabb* unless the Court were to determine that the

21   plaintiffs have satisfied the preliminary injunction factors

22   which we obviously don't think plaintiffs can do for the

23   reasons we have explained in our briefs and have discussed

24   in our argument.

25        THE COURT:  All right.  What is your view on my

1    authority under the All Writs Act if I were to agree with

2    you that no irreparable harm was known because the parts of

3    the regulations hadn't been invoked but in order to prevent

4    the mootness problem requiring the Government to give notice

5    of invoking those provisions?

6              MR. HUMPFREYS:  Again, Your Honor, I don't think

7    that's necessary given our repeated representations here.  I

8    have certainly done my homework before appearing before the

9    Court.  I think the Court can rely on the Government's

10   unequivocal statements here so I don't think that's

11   necessary and certainly, as a belts and suspenders approach,

12   not consistent with cases suggesting that the All Writs Act

13   should be invoked only when it's necessary to prevent

14   ripeness and any mootness occurring at the same time.

15             So I don't think even notice is necessary or

16   appropriate.  But just to reiterate, to the degree any

17   injunction is involved in the Court's order, the Court would

18   need to evaluate the four PI factors.

19             THE COURT:  Okay.  But absent an injunction, what

20   is your position as to whether I have the authority to issue

21   an All Writs Act order just requiring notice?

22             MR. HUMPFREYS:  On just notice, Your Honor, I

23   think the Court would still need to conclude that the issues

24   will, in fact, become ripe and moot at the same time in

25   order to exercise that authority; and I'd point the Court to

1    the D.C. Circuit's opinion in *Wagner versus Taylor*, 836 F.2d

2    566.

3            So we disagree that the Court would -- that that

4    would be appropriate to make that finding, but I recognize

5    Your Honor, that it's a different issue from an actual

6    injunction.

7            THE COURT:  All right.  Let me ask you a separate

8    question about -- going back to getting the authority from

9    the solicitor to petition the Supreme Court.  Do you have

10   any sense of timing on that?

11           MR. HUMPFREYS:  Obviously quickly.  Obviously

12   quickly, Your Honor; but, no, I don't have any specific

13   timing on that.

14           THE COURT:  Okay.  Once either party becomes aware

15   of anything submitted to the Supreme Court and has a docket

16   number or something that I can stay updated on, if you could

17   put that on the docket -- just a notice to the Court -- I

18   would appreciate that.

19           MR. HUMPFREYS:  Certainly, Your Honor.

20           MS. PRELOGAR:  Absolutely.

21           THE COURT:  Okay.  Anything else I need to be

22   informed of today as we continue to consider the motion?

23           MS. PRELOGAR:  Your Honor, could I just provide a

24   couple of points in quick reaction to what the Government

25   said?

1          THE COURT:  Sure.

2          MS. PRELOGAR:  And I will be brief; I appreciate

3     your willingness to hear us out on this.

4          I want to just touch on a couple of points here.

5     It seems like what the Government is suggesting is that

6     based on the representations that it's made in its brief it

7     can effectively do away with any potential irreparable harm

8     or make the case unripe.  And I just want to be clear that

9     we are not aware of any authority that suggests that the

10    Government can basically stymie judicial review in that

11    section; so we don't think that the representations are a

12    full accounting of the harm that we're suffering here.

13         We also don't think that this notice period would

14    itself constitute an injunction.  It wouldn't be an order

15    from this Court directing that the Government cannot rely on

16    the regulations; of course, that's the primary relief we're

17    seeking through the preliminary injunction motion.  But we

18    do perceive the notice period as serving a different role

19    and function to preserve the Court's jurisdiction to prevent

20    the mootness harm.  So, for that reason, we think that the

21    traditional PI factions wouldn't apply under the All Writs

22    Act.

23         But to the extent that the Government is

24    suggesting that there is no irreparable harm here, I did

25    want to push strongly back on that.  Of course, under the

1  standard for preliminary injunction, there just has to be a

2  likelihood of irreparable harm; we don't have to prove it's

3  already happened here.  We think that given the impending

4  execution that is scheduled for Mr. Higgs and given the

5  expedited relief now that the Government says it intends to

6  seek and given the substantial uncertainty that exists about

7  what state law would apply or how these regulations could be

8  invoked, we're very worried about the potential risk of

9  grave harm to Mr. Higgs and to our other plaintiffs if the

10  Government is able to proceed with no checks on the final

11  rule at this juncture.

12         So, ultimately, we would encourage the Court to

13  either exercise its authority under the All Writs Act to

14  provide a notice period or to grant us the preliminary

15  injunction we have requested.

16         THE COURT:  Okay.  Well, what kind of

17  representations from the Government about not exercising the

18  provisions of the regulation would satisfy you?

19         MS. PRELOGAR:  So we would prefer to see it

20  embodied in a court order even if it's just directing the

21  Government to comply with the representations we have made.

22         Our concern is really based on what's happened in

23  the past here; the Government's rush to execute; the fact

24  that we are nearing the end of a presidential administration

25  where there has been a real focus on seeking to execute as

1   many people as possible, and the fact that the Government

2   went ahead and made sure to finalize this final rule before

3   these new executions are set to occur.  Of course, there are

4   three executions next week that are going to be governed by

5   this final rule.

6            So, for those reasons, we'd prefer to see this

7   embodied in a court order with a further direction to

8   provide notice if the Government does seek to rely on any of

9   these authorities, including on a going forward basis with

10  the 26.2 problem of potentially setting an execution date

11  without any involvement of the Court.

12           THE COURT:  All right.

13           Mr. Humpfreys --

14           MR. HUMPFREYS:  If I could respond?

15           THE COURT:  -- do you want to respond to that?

16           MR. HUMPFREYS:  Yes, I would.  Thank you for the

17  opportunity, Your Honor.

18           A couple of points.  One, to the degree that this

19  notice period that plaintiffs contemplate would require any

20  delay of an execution, I mean, there would absolutely be an

21  injunction, I don't think there can be any question about

22  that and before preliminary injunction factors would need to

23  be satisfied.

24           I would also say for the reasons we have explained

25  in our brief, we thought that plaintiffs couldn't meet

1   plaintiffs burden in this motion and plaintiffs could not

2   meet irreparable harm factor already given the uncertainty.

3   And certainly that's all the more true given the

4   representation that the Government has made repeatedly to

5   the Court.  So we would reiterate that it's plaintiffs'

6   burden, and we do not believe that plaintiffs have met it.

7           I will leave it there, Your Honor.  Thank you.

8           THE COURT:  All right.  Because the situation is

9   so fluid, let's schedule another conference call, hopefully

10  a short one, on Friday.

11          What do the parties' schedules look like for

12  Friday?

13          MR. HUMPFREYS:  Your Honor, this is Mr. Humpfreys.

14          My schedule is free on Friday.  Thank you.

15          MS. PRELOGAR:  Hello, Your Honor.  I am free at

16  all times except for 12:30 to 1:30 p.m. on Friday.

17          THE COURT:  Okay.  And that's eastern time,

18  correct?

19          MS. PRELOGAR:  That's eastern time, yes.

20          THE COURT:  Okay.  Let's -- how about 10 -- how

21  about 11 a.m.?

22          MS. PRELOGAR:  That works for me.

23          MR. HUMPFREYS:  Me, too, Your Honor.  Thank you.

24          THE COURT:  Okay.  So same -- same call-in

25  instructions 11 a.m. on Friday.

1          Anything else we need to resolve today?

2          MS. PRELOGAR:  No, Your Honor.  Not on our end.

3          THE COURT:  All right.

4          MR. HUMPFREYS:  Not on our end either.  Thank you.

5          THE COURT:  All right.  You are excused.

6          MS. PRELOGAR:  Thank you.  Good-bye.

7          (Whereupon, the proceeding concludes, 2:28 p.m.)

8                          * * * * *

9                        **CERTIFICATE**

10

11          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
   certify that the foregoing constitutes a true and accurate
   transcript of my stenographic notes, and is a full, true,
12   and complete transcript of the proceedings to the best of my
   ability.

13

14          PLEASE NOTE:  This hearing was held telephonically
   in compliance with the COVID-19 pandemic stay-safer-at-home
15   orders and is therefore subject to the limitations
   associated with the use of technology, including but not
16   limited to telephone signal interference, static, signal
   interruptions, and other restrictions and limitations
17   associated with remote court reporting via telephone,
   speakerphone, and/or videoconferencing capabilities.

18

19          This certificate shall be considered null and void
   if the transcript is disassembled in any manner by any party
20   without authorization of the signatory below.

21
          Dated this 12th day of January, 2021.
22

23   /s/ Elizabeth Saint-Loth, RPR, FCRR
   Official Court Reporter
24

25