# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL CAPITAL HABEAS PROJECT, et al.<br><br>Plaintiffs,<br><br>v.<br><br>JEFFREY A. ROSEN, in his official capacity as Acting Attorney General of the United States,[1] et al.<br><br>Defendants. | Case No. 20-cv-03742-RC<br><br><br><br>**DECLARATION OF AMY HARWELL** |

I, Amy Harwell, declare as follows:

1. I am over eighteen years of age. I submit this declaration in support of Plaintiffs' January 15, 2021 Status Report. I have personal knowledge of the following facts, and if called to testify, could and would testify competently thereto.

2. I am the Assistant Chief of the Capital Habeas Unit in the Office of the Federal Defender in Nashville, Tennessee. I was counsel for Lisa Montgomery and represented her for 8 years. Lisa Montgomery was an individual on federal death row whose execution was carried out on January 12, 2021. She was the first woman to be executed in 67 years by the U.S. Government.

3. I have reviewed the Declaration of Rick Winter, which the Government filed in this case on January 14, 2021. (Dkt. 22-1.)

4. I disagree with Mr. Winter's statement that "BOP has no record of Mrs.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Jeffrey A. Rosen is substituted for his predecessor, William P. Barr.

Montgomery asking for Mr. Francisco [sic] to be present in the execution room." (Dkt. 22-1, Winter Decl. ¶ 5.) BOP provided us with one form on which Mrs. Montgomery could request witnesses to be present for her execution. *See* Exhibit 1. The form provides that one requested witness "may be a member of the clergy." *Id.* We completed the form and included Mr. John Fransisco on the line provided for a clergy member. *Id.* We were never provided another form or any other way to request a spiritual advisor to be present specifically in the execution room. Accordingly, we understood that the designation of Mr. Fransisco as a witness on the only form provided for designating a member of the clergy to be present when an individual is being put to death, alongside the longstanding norm that spiritual advisors be present in the execution room, was sufficient to ensure that Mr. Fransisco would be allowed inside the execution room.

5.      This understanding was reinforced when BOP made specific arrangements with Mr. Fransisco about the logistics for the day of the execution. Indeed, Mr. Winter described Mr. Fransisco as Mrs. Montgomery's "Minister of Record." (Dkt. 22-1, Winter Decl. ¶ 4.) BOP did not take similar steps with any of the other witnesses. If that was not sufficient to ensure that Mr. Fransisco would serve as Mrs. Montgomery's designated spiritual advisor while she was put to death—the person who can be present in the execution chamber to provide last rites or pray with the condemned—then I don't know what would have been.

6.      Mr. Winter stated that staff at FMC Carswell "had multiple conversations" with Mrs. Montgomery about her execution but "has no record" of her requesting Mr. Fransisco "be in the execution room." (Dkt. 22-1, Winter Decl. ¶ 7.) That is not true. BOP has the record of the request to have Mr. Fransisco be her designated spiritual advisor during her execution, which we understood to be a request to have Mr. Fransisco in the execution room (attached here as Exhibit 1). Perhaps Mrs. Montgomery didn't talk about the request with staff because it had

2

already been made in writing and approved.

7.     Likewise, Mr. Winter stated that Mr. Fransisco did not make a request to be in the execution room. (Dkt. 22-1, Winter Decl. ¶ 8.) Again, the request had already been made in writing, so there was no reason for Mr. Fransisco to raise this.

8.     Mr. Winter also stated: "Mr. Francisco acknowledged to FCC Terre Haute's Chaplain that he was aware that Mrs. Montgomery did not want him to be in the execution room." (Dkt. 22-1, Winter Decl. ¶ 8.) I do not believe this is accurate. My understanding is that Mr. Fransisco expected to be in the room with Mrs. Montgomery. Indeed, that was the whole point of him driving from Branson, Missouri to Terre Haute to be present in the execution chamber as a spiritual advisor. We had discussed with Mrs. Montgomery that Mr. Fransisco would care for her while she was in the execution chamber and would sing "Jesus Loves Me" and "Amazing Grace" while the chemicals flowed into her.

9.     Mr. Winter also described a conversation between "a BOP official" and Mrs. Montgomery on the day of her scheduled execution. (Dkt. 22-1, Winter Decl. ¶ 9.) The fact that she "did not voice any concern" about Mr. Fransisco being in the witness room "nor did she indicate that she wanted him to be in the execution room" (Dkt. 22-1, Winter Decl. ¶ 9) does not surprise me. She had trouble processing information on the day of her execution. Rather, I am shocked that BOP would rely on a conversation directly with Mrs. Montgomery that day. I spoke to her at length that day. She was completely disassociated from reality and had been suffering from psychosis for quite some time before then, as BOP was well aware because we had made numerous filings that explained Mrs. Montgomery's mental incapacity.

10.    Before Mrs. Montgomery was executed, I was brought to the observation room, along with Mr. Fransisco. We expected that Mr. Fransisco would be taken into the execution

3

chamber, where he and Mrs. Montgomery had planned for him to be. When we realized this was not happening, we raised with a BOP official that Mr. Fransisco was supposed to be in the execution chamber with Mrs. Montgomery. I informed the BOP official that Mrs. Montgomery wanted Mr. Fransisco present with her in the chamber, as we had planned and repeatedly discussed with Mrs. Montgomery.

11. One of the BOP guards said that she would check, but quickly returned saying it was "too late." Since Mrs. Montgomery was still alive at this point, I do not understand how it was "too late" for Mr. Fransisco to walk the short distance to enter the chamber to say a prayer with Mrs. Montgomery before she was executed.

12. Following the execution of Mrs. Montgomery, I had follow-up conversations with Mr. Fransisco in which he confirmed to me that he never acknowledged to BOP that he would be in the witness room instead of the execution chamber.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Nashville, Tennessee on January 15, 2021.

Amy Harwell

# EXHIBIT 1

## FORM A

This form must be submitted by the condemned inmate to his/her Unit Manager no later than 30 days prior to the scheduled execution date.

Inmate Name: <u>MONTGOMERY, LISA</u>        Register Number: <u>11072-031</u>

Scheduled Execution Date: <u>DECEMBER 8, 2020</u>    Form Due Date: <u>NOVEMBER 8, 2020</u>

Requested Witnesses:

The condemned inmate is permitted to request a total of six persons to witness his/her execution. All witnesses must be 18 years of age or older. Two witnesses may be attorneys of law. One witness may be a member of the clergy. The three remaining witnesses may be family members or friends.

1). (Attorney): *Kelley Henry*

2). (Attorney): *Amy Harwell*

3). (Clergy): *John Francisco*

4). (Family/Friend): *Lisa Nouri*

5). (Family/Friend): _____

6). (Family/Friend): _____

cc: Command Center